

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 16, 1960

Mr. R. E. Swift
County Attorney
Anderson County
Palestine, Texas

Dear Mr. Swift:

Opinion No. WW-935

Re: Permissibility of deducting
reserve for bad debts set
up by National Bank pursuant
to Federal Rulings in arriving
at the value of shareholder's
shares for state and county
ad valorem tax purposes.

We quote the following excerpt from your letter requesting our opinion on the above captioned matter.

"For state and county tax purposes, is a National Bank required to include in its capital structure a reserve for bad debts set up under the federal statute or ruling sometimes referred to as the '20 year moving average' statute or ruling?

"Attached hereto are two statements made by the bank in question, one of them labeled statement A and the other labeled statement B.

"An inspection of the two statements will disclose a difference of $98,505.33 in the total liabilities and capital accounts, and it is agreed by the bank in question that this difference is a reserve for bad debts set up under the following rulings:

'U.S. Treasury Department, Internal Revenue Service Mimeograph #54-55 of April 8, 1954. Commissioner's Mimeograph #6209, 12-8-1947. Revenue Department Ruling #59-83, 3-16-59, Bulletin 11, Revenue Ruling #54-148 C.B. 1954-1, 60.'

"This reserve for bad debts has been set up under the above statute or ruling and the bank in question has stated that the limit of these reserves under the federal statute or ruling has not been exceeded.

-2442-

"This bank takes the position that this reserve account should not be included in determining the assets of the bank subject to state and county ad valorem taxes.

". . . .

"The other banks in Palestine do not have any such special reserve set up for bad debts under the federal statute or ruling. I was requested to ask your opinion that if the bank which has the large reserve for bad debts was not required to include it as part of the assets of the bank in order to determine the value of the shares and thus determine the tax liability for the shareholders, would the other banks be permitted to deduct from their capital accounts a proportionate sum of their respective total loans."

Article 7165 and 7166 Vernon's Civil Statutes, set out in full in the footnote below,[1] provide for the assessment of

---

[1] Article 7165 reads as follows:

"Every bank, whether of issue or deposit, banker, broker, dealer in exchange, or stock jobber, shall at the time fixed by this chapter for listing personal property, make out and furnish the assessor of taxes a sworn statement showing:

"1. If a national bank, the president or some other officer of such bank shall furnish to the assessor of the county in which such bank is located a list of the names of all the shareholders of the stock, together with the number and amount of the shares of each stockholder of stock in said bank; and the shareholders of the stock in national banks shall render to the tax assessor of the county in which said bank is located the number of their shares and the true and full value thereof. All shares of stocks in national banks not rendered to the assessor of taxes in the county where such bank is located within the time prescribed by law for listing property for taxes shall be assessed by the assessor against the owner or owners thereof as unrendered property is assessed; but the tax roll shall show the name of the owner or owners thereof as per statement furnished by the president or other officers of said bank.

Mr. R. E. Swift, Page 3          Opinion No. WW-935

personal and real property of banks.  In <u>City of Marshall v.</u>
<u>State Bank</u>, 127 S.W. 1083 (Tex.Civ.App. 1910, error ref.), the
court held a state bank was not liable for any taxes except

I (Cont.)

"2.  National banks shall render all
other bonds and stocks of every kind,
except United States bonds, and all shares
of capital stocks or joint stock or stocks
of other companies or corporations held
as an investment or in any way representing
assets, together with all other personal
property belonging or pertaining to said
bank, except such personal property as is
specially exempted from taxation by the
laws of the United States.

"3.  National banks shall be required to
render all of their real estate as other
real estate is rendered; and all the personal
property of said national banks herein taxed
shall be valued as other personal property
is valued.

"4.  All other banks, bankers, brokers, or
dealers in exchange, or stock jobbers shall
render their list in the following manner:

"(1)  The amount of money on hand or in
transit or in the hands of other banks,
bankers, brokers or others subject to draft,
whether the same be in or out of the State.

"(2)  The amount of bills receivable,
discounted or purchased and other credits
due or to become due, including accounts
receivable, interest accrued but not due,
and interest due and unpaid.

"(3)  From the aggregate amount of the
items named in the first and second of the
last two subdivisions shall be deducted
the amount of money on deposit.

"(4)  The amount of bonds and stocks of
every kind, except United States bonds,
and all shares of capital stocks or joint
stocks of other companies or corporations
held as an investment or in any way repre-
senting assets.

those assessed against its real estate. On Motion for
Rehearing, the court pointed out that under the Acts of
1883, page 111; 9 Gammel's Laws of Texas, 417, property,
both real and personal, owned by state banks could be taxed

I (Cont.)

> "(5) All other property belonging
> or appertaining to said bank or business,
> including both personal property and real
> estate, shall be listed as other personal
> property and real estate."

Article 7166 reads as follows:

> "Every banking corporation, State or
> national, doing business in this State
> shall, in the city or town in which it is
> located, render its real estate to the tax
> assessor at the time and in the manner
> required of individuals. At the time of
> making such rendition the president or some
> other officer of said bank shall file with
> said assessor a sworn statement showing the
> number and amount of the shares of said
> bank, the name and residence of each share-
> holder, and the number and amount of shares
> owned by him. Every shareholder of
> said bank shall, in the city or town where
> said bank is located, render at their actual
> value to the tax assessor all shares owned
> by him in such bank; and in case of his
> failure so to do, the assessor shall assess
> such unrendered shares as other unrendered
> property. Each share in such bank shall
> be taxed only for the difference between
> its actual cash value and the proportionate
> amount per share at which its real estate
> is assessed. The taxes due upon the shares
> of banking corporations shall be a lien
> thereon, and no banking corporation shall
> pay any dividend to any shareholder who is
> in default in the payment of taxes due on
> his shares; nor shall any banking corporation
> permit the transfer upon its books of
> any share, the owner of which is in default
> in the payment of his taxes upon the same.
> Nothing herein shall be so construed as to
> tax national or State banks, or the share-
> holders thereof, at a greater rate than is

directly in the hands of the individual or corporate owners
while that of national banks could be reached only by taxing
the shares of stock in the hands of the holders. The court
said that the 1885 enactment of what currently appeared as
Article 5080 of the then Revised Statutes[2] indicated a
Legislative intent that effect be given to both Articles
5079[3] and 5080. The court pointed out that Article 5079
was broad enough to include within its terms an individual
or partnership, as well as a corporation engaged in the
banking or stock jobbing business and that it might also
include joint-stock companies and others engaged and doing
an exchange or brokerage business. Article 5080 related
exclusively to state or national banking corporations.
At page 1086, the court said:

> " . . . . We cannot construe article
> 5079 as a method for assessing the
> property held by state banking corporations
> without suspending or annulling some of
> the provisions of Art. 5080, or holding
> that the Legislature intended to tax both
> the property of the bank and its shares of
> stock in the hands of the stockholders also.
> This would be double taxation, and would be
> attributing to the Legislature an intent
> which would render one or the other of the
> two articles void. Gillespie v. Gaston,
> supra. The proper construction, we think,
> would be to hold that in adopting the act
> of 1885 (article 5080) the Legislature
> intended thereby to provide a special and
> uniform method for taxing the personal
> property represented by the bank's holding
> to be made applicable to both state and
> national corporate institutions.
>
> " . . . . We must assume that in the
> enactment of article 5080 the Legislature
> had a definite purpose in view, and intended

---

I (Cont.)

> assessed against other moneyed capital in
> the hands of individuals."

[2] Presently carried as Article 7166, V.C.S.

[3] Presently carried as Article 7165, V.C.S.

that all of its provisions should be
enforced. Those provisions relating to
the taxation of the shares of stock of
incorporated state banks cannot be
enforced as a method of taxation if it
be held that the personal property of
such institutions is subject to taxation
against the corporation itself. We cannot
attribute to the Legislature the intent
to have two inconsistent statutes enforced;
nor should we treat one as repealing the
other by implication, unless the inconsistency
results from the only reasonable construction
that can be placed upon them. There are in
this state single individuals and associations
of persons engaged in the classes of business
referred to in article 5079 to which it may
apply. The requirements as to the detailed
lists to be furnished may also prove service-
able to assessors and equalization boards
in arriving at the proper valuation of shares
of stock in incorporated banks. By giving
full effect to the provisions of article 5080
it operates only to except incorporated state
banks from the provisions of article 5079,
in so far as that article may be relied on
as a basis of assessing the personal property
of such banks. Article 5079 is general in
its scope, while article 5080 is special. In
such cases there is no irreconcilable conflict,
and courts universally give effect to both by
construing one as an exception from the general
terms of the other.

". . . . Adopting this construction of the
two articles of the statute to which we have
referred, we think it is clearly apparent
that the Legislature intended by article 5080
to provide a means of taxing the personal
property of state banking corporations in the
hands of the shareholders."

In Opinion No. WW-439, this office held that in determining
the value of bank stock, assessment should be based upon the
fair cash market value of the stock less the value of the
proportionate amount per share of the real estate owned by the
bank rather than the value that would be obtained by adding
the value of the capital stock, the amount of surplus, undivided
profits or reserve funds and dividing this by the number of
shares of stock. This is so because it is proper for the

assessor or board to consider all elements which tend to augment the value of the stock in the hands of the individual stockholder.

The fact that the bank is required under federal law to set apart a reserve for bad debts does not change the fact that such reserve constitutes a segregated portion of its earned surplus and a part of its personal property. Even though such reserves cannot be taxed against the bank, they are necessarily a factor to be considered in arriving at the actual cash market value of the shares for the purpose of determining the tax liability of shareholders.

Since we have concluded that a national bank's reserve for bad debts may not be deducted but must be treated as part of the assets in valuing its shares for ad valorem tax purposes, it is evident that we could find no basis for allowing banks other than national banks to deduct from their capital accounts a proportionate sum of their respective total loans.

### S U M M A R Y

The reserve for bad debts set up by a National Bank pursuant to Federal rulings may not be deducted in arriving at the value of the shareholder's shares for State and County ad valorem tax purposes. Nor may a bank, other than a National Bank, deduct a proportionate sum for bad debts in arriving at the value of the shareholder's shares for State and County ad valorem tax purposes.

Yours very truly,

WILL WILSON
Attorney General of Texas

MMP:jip

By: Marietta McGregor Payne
    Marietta McGregor Payne
    Assistant

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Virgil Pulliam
James P. Ryan
Leon F. Pesek

REVIEWED FOR THE ATTORNEY GENERAL
By: Leonard Passmore